# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MISSOURI

SUSAN GARBARINO, individually, and
on behalf of all others similarly situated,

                    Plaintiff,

v.

NAHON, SAHAROVICH, & TROTZ,
PLC,

                    Defendant.

**Case No. 4:23-cv-01326-JMB**

**CLASS ACTION**

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF THE LITIGATION .....................................................................1

    A.  Factual Allegations ...................................................................................... 1

    B.  Litigation History ......................................................................................... 2

III.  TERMS OF THE SETTLEMENT .........................................................................2

    A.  The Settlement Class..................................................................................... 2

    B.  The Settlement Benefits ................................................................................ 3

    C.  Notice, Notice Plan and Claims Administration........................................... 3

    D.  The Settlement Administrator, Attorneys' Fees, Costs and Service Award................. 4

    E.  Released Claims ............................................................................................ 4

IV.  LEGAL ARGUMENT..............................................................................................5

    A.  The Settlement Falls Within the Range of Reasonableness........................... 5

        1.  *Plaintiff and Counsel Have Adequately Represented the Class* .......................6

        2.  *The Settlement Resulted from Informed, Arm's-Length Negotiations* ..............7

        3.  *The Relief Provided for the Class Is Adequate* .................................................7

        4.  *The Settlement Structure Is Fair, Effective, and Reasonable* ...........................8

        5.  *The Settlement Falls Within the Range of Possible Approval* ..........................9

        6.  *Experienced Counsel Recommend Approval* ..................................................10

        7.  *The District's Procedural Guidelines for Preliminary Approval Are Satisfied* ..................................................................................................11

    B.  The Proposed Settlement Class Should be Certified ................................... 11

        8.  *The Class Meets the Requirements of Rule 23(a)* ...........................................11

        9.  *The Class Meets the Requirements of Rule 23(b)(3)* ......................................12

    C.  The Proposed Notice and Notice Program Meet All Applicable Requirements ........ 14

        10. *The Notice Plan Uses the Best Practicable Means to Reach Class Members* .14

11. *The Proposed Notice Adequately Informs Class Members of Their Rights and Options* ........................................................................................................... 15

D.  Settlement Class Counsel Should be Appointed ......................................................... 15

V.  CONCLUSION ...................................................................................................................... 15

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591, 620 (1997) ................................................................................................ 13

*Cope v. Let's Eat Out, Inc.*,
    319 F.R.D. 544, 553 (W.D. Mo. 2017) .......................................................................... 13

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356, 365, 378 (N.D. Cal. 2021) ..................................................................... 9

*Gaston v. Fabfitfun*,
    Case No. 2:20-cv-09534 (C.D.Cal.) .................................................................................. 9

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) ....................................................... 7

*In re Anthem Data Breach*,
    327 F.R.D. 299, 329 (N.D.Cal. 2018) .......................................................................... 8, 9

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016) ........................................................ 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) ......................................... 7, 8, 14

*In re Premera Blue Cross Data Breach*,
    Case No. 3:15-md-02633 (D.Or.) ..................................................................................... 9

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
    2020 WL 4212811, *12 (N.D. Cal. July 22, 2020) ................................................. passim

*Kent v. Hewlett-Packard Co.*,
    2011 WL 4403717, *1 (N.D. Cal. Sept. 20, 2011) ....................................................... 12

*Komoroski v. Serv. Partners Private Label, Inc.*,
    No. 4:16-CV-00294-DGK, 2017 U.S. Dist. LEXIS 119292, at *3 (W.D. Mo. July 31, 2017) .. 9

*Lees v. Anthem Ins. Cos.*,
    No. 4:13CV1411 SNLJ, 2015 U.S. Dist. LEXIS 74902, at *4 (E.D. Mo. June 10, 2015) ......... 7

*Mayo v. USB Real Estate Sec., Inc.*,
    No. 08-00568-CV-W-DGK, 2011 U.S. Dist. LEXIS 31390, at *22 (W.D. Mo. Mar. 25, 2011)
    ................................................................................................................................... 14

*Postawko v. Mo. Dep't of Corr.*,
    910 F.3d 1030, 1039 (8th Cir. 2018) ............................................................................ 12

*Schwartz v. Yahoo! Inc.*,
    No. 20-16633 (9th Cir. June 27, 2022) ...................................................................... 8

*See In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021).............................. 9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 12

*Thornburg v. Ford Motor Co.*,
    No. 4:19-cv-01025-NKL, 2022 U.S. Dist. LEXIS 168354, at *18-19 (W.D. Mo. Sep. 19, 2022)
    .................................................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)............................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 350 (2011)...................................................................................... 11

*Zilhaver v. UnitedHealth Grp., Inc.*,
    646 F. Supp. 2d 1075, 1081 (D. Minn. 2009)............................................................. 6

## STATUTES/RULES

### Federal

Fed. R. Civ. P. Rule 23 ................................................................................. *passim*

## SECONDARY SOURCES

*Newberg on Class Actions § 13:1 (5th ed.)* ....................................................... 6

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Susan Garbarino ("Plaintiff") hereby moves this Court for an Order preliminarily approving the proposed Settlement entered into by Plaintiff and Defendant Nahon, Saharovich & Trotz, PLC ("NST" or "Defendant") (collectively, the "Parties").

This Motion is made pursuant to Federal Rules of Civil Procedure Rule 23(e) on the grounds that the proposed Settlement is fair, reasonable and adequate when viewed against the continued risks of litigation, the proposed Settlement Class meets all criteria for certification for Settlement purposes and the proposed Notice and notice plan are designed to ensure the best practicable notice and compliance with due process. Defendant does not oppose this Motion.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Settlement Agreement and all exhibits thereto, the Declaration of Laura Van Note in Support of Plaintiffs' Motion for Preliminary Approval of Settlement and all exhibits thereto, all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated: November 4, 2024                    **COLE & VAN NOTE**

         By:  */s/ Laura Van Note*
            Laura Van Note, Esq.
            (E.D. M.O. Bar No. 310160CA)
            **COLE & VAN NOTE**
            555 12th Street, Suite 2100
            Oakland, California 94607
            Telephone: (510) 891-9800
            Facsimile: (510) 891-7030
            Email: lvn@colevannote.com

            Attorneys for Representative Plaintiff
            and the Proposed Class

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Eastern District of Missouri, Rule 4.01(A), Plaintiff asks the Court to rule on the following issues:

1.    Whether the proposed Settlement is fair, adequate and reasonable;

2.    Whether the proposed Settlement Class should be certified for Settlement purposes;

3.    Whether the proposed Notice and notice program are adequately tailored to achieve effective notification to Class Members as to the terms of the Settlement and their rights thereunder;

4.    Whether Laura Van Note of Cole & Van Note, should be appointed as Class Counsel and Plaintiff Susan Garbarino as Class Representative; and

5.    Whether to enter the Proposed Order Preliminarily Approving the Settlement, directing the issuance of notice, setting forth remaining deadlines and setting a hearing for final approval of the proposed Settlement.

## I.    INTRODUCTION

In July 2023, Defendant Nahon, Saharovich & Trotz, PLC ("NST" or "Defendant") began sending Notice to 15,600 individuals whose personal information was potentially accessed by an unauthorized third party that gained unauthorized access to its network servers. Plaintiff filed the Complaint on October 20, 2023, alleging (i) Negligence, (ii) Breach of Implied Contract, and (iii) Breach of the Implied Covenant of Good Faith and Fair Dealing.

After two full-day mediations and an extensive Settlement negotiation process lasting several months, the Parties have reached a proposed Settlement that provides for the creation of a Settlement Fund of $232,500.00 which will be used to provide each Class Member with direct cash benefits including reimbursement for any valid Out-of-Pocket losses fairly traceable to the Data Breach up to $5,000 and a *pro rata* share of the Settlement common fund. After payments for attorneys' fees, litigation costs, settlement administration costs, and a service award to the named Plaintiff, all Class Members who make a valid claim will receive a cash payment consisting of a *pro-rata* share of the remainder of the Settlement Fund. Taken together, these monetary and non-monetary benefits represent a strong recovery when viewed in comparison to what could be achieved through trial even *before* taking into account the significant risk, cost and delay of continued litigation.

## II.    SUMMARY OF THE LITIGATION

### A.    Factual Allegations

Plaintiff alleges unauthorized third parties exploited a vulnerability in Defendant's computer systems and accessed Defendant's network and accessed and/or exfiltrated Class Members' sensitive, non-public protected health information ("PHI") and personally identifiable information ("PII") (the "Data Security Incident"). Class Action Complaint (hereafter "CMP") ¶¶

5-10. Plaintiff alleges the Data Security Incident began on June 28, 2023. CMP ¶ 4. Plaintiff alleges that Defendant sent notice to potentially affected individuals beginning on September 12, 2023. CMP ¶ 4. Plaintiff alleges that she received such a notice dated September 12, 2023, and subsequently filed suits in this Court seeking damages for the class for lost time, the threat of future harm, out-of-pocket expenses and other injuries related to this event. CMP ¶ 14-20.

### B.    Litigation History

Class Counsel has thoroughly investigated the key facts of this case. Declaration of Laura Van Note, ¶ 10.[1] Class Counsel's investigation, combined with the information exchanged in connection with mediation, provided Class Counsel with sufficient understanding about the relative strengths and weaknesses of the various claims and defenses at issue in this case to reach an informed decision and a fair resolution. *Id.* After the filing of the Action, NST filed an answer to the Complaint. The Parties mediated pursuant to the Court's Order on March 18, 2024, but did not reach a compromise. Shortly after, both Parties served discovery. The Parties subsequently engaged the Honorable David E. Jones (former United States Magistrate Judge) of Resolute Systems, LLC as a mediator to oversee a second mediation of the Action on July 23, 2024, which was successful. This resulted in the Settlement Agreement accompanying this Motion. *Id*.

## III.   TERMS OF THE SETTLEMENT

### A.    The Settlement Class

"Settlement Class" means all individuals within the United States of America whose Personal Information was potentially exposed to unauthorized third parties as a result of the Data Security Incident. The Settlement Class specifically excludes Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling

---

[1] Hereafter cited as "Van Note Decl."

interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state, or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. S.A.¶ 38.

**B.    The Settlement Benefits**

The Settlement provides for a *pro-rata* cash payment for each Class Member, plus reimbursement for any valid Out-of-Pocket losses fairly traceable to the Data Breach up to $5,000. S.A.¶ 46.

**C.    Notice, Notice Plan and Claims Administration**

Within ten (10) days after the date of the Preliminary Approval Order, NST shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after the date of the Preliminary Approval Order, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. S.A.¶ 56 As soon as practicable but starting no later than thirty (30) days from the date of the Preliminary Approval Order, the Settlement Administrator shall disseminate the Postcard Notice via USPS First Class Mail to all Settlement Class Members. It shall be conclusively presumed that the intended recipients received the Postcard Notice if the mailed Postcard Notices have not been returned to the Settlement Administrator as undeliverable within fifteen (15) days of mailing. S.A.¶ 57a.

Prior to the date on which the Settlement Administrator initiates the Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement Website shall contain the Settlement Agreement, contact information for Class Counsel and NST's Counsel, contact information for the Settlement Administrator, the publicly filed motion for preliminary approval,

motion for final approval, motion for attorneys' fees and expenses (when they become available), the signed Preliminary Approval Order, and a downloadable and online version of the Claim Form and Long-form Notice. The Settlement Website shall provide for secure online submission of Claim Forms and supporting documents. The Settlement Website shall contain a prominent notification that "No Claims Forms will be accepted via email." S.A.¶ 57b.

### D.    The Settlement Administrator, Attorneys' Fees, Costs and Service Award

The Parties selected Epiq as the Settlement administrator. Van Note Decl. ¶ 21. Epiq estimates the cost of notice and administration at approximately $58,000, a reasonable amount in relation to the size of the Class and value of the Settlement. Van Note Decl. *Id*.

Settlement Class Counsel requests attorneys' fees of up to thirty-three and 1/3 percent (33.33%) of the Settlement Fund ($77,492) plus Litigation Costs and Expenses not to exceed $65,000.00 to be paid from the Settlement Fund. Van Note Decl. ¶ 13. Settlement Class Counsel will request a Service Award payment to Representative Plaintiff in the amount of $2,500. S.A. ¶76.

### E.    Released Claims

Upon entry of the Final Approval Order, each Settlement Class Member, including Representative Plaintiffs, shall be barred from initiating, asserting or prosecuting against NST and any Released Parties any claims that are released by operation of the Class Settlement Agreement and the Final Approval Order. Each Settlement Class Member, including Plaintiff, whether or not they have received an Award, will be deemed by operation of the Agreement to have fully released, discharged and acquitted NST and the Released Parties from any and all of the Released Claims and will be deemed to have also released Unknown Claims. *Id*. This includes a release of any and all Unknown Claims, even if unrelated to the Released Claims, and any and all provisions, rights

and benefits conferred by any law of any state, province or territory of the United States which is similar, comparable or equivalent to California Civil Code section §1542. S.A. § ¶¶73-74.

## IV.     LEGAL ARGUMENT

Judicial approval of class action settlements typically proceeds through three stages: (i) preliminary approval, where the court conducts an initial fairness review and decides whether to notify the class, (ii) a notice period, where class members are given an opportunity to review the Settlement and object or comment, and (iii) a fairness hearing, where the court considers the overall class reaction and makes its final determination. *See* Federal Rules of Civil Procedure Rule 23; *Newberg on Class Actions § 13:1 (5th ed.).*

This case is now at the preliminary approval stage, where the Court will decide whether the Parties should notify Class Members about the Settlement. That decision requires the Court to make several preliminary determinations: first, whether the proposed Settlement is likely to be approved if notice is disseminated to the Class; second, whether the proposed Settlement class is likely to be certified for purposes of judgment; third, whether the parties' proposed notice plan provides for the best notice practicable under the circumstances and the Settlement Administrator may disseminate notice; and fourth, the Court sets a schedule for notifying the Class and considering its reaction to the proposed Settlement. Fed. R. Civ. P. 23(c), (e). In the sections that follow, Plaintiff offers their analysis of each facet of the preliminary approval process, including the Rule 23's procedural guidelines for the preliminary approval of class action settlements.

### A.     The Settlement Falls Within the Range of Reasonableness

The 2018 amendments to Rule 23 direct the Parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. Rule 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a

class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id*. The two procedural concerns are (i) whether plaintiff and their counsel have adequately represented the class and (ii) whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. Rule 23(e)(2)(A)-(B). The two substantive concerns are (i) whether the relief provided for the class is adequate and (ii) whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Here, review of these four core concerns favors the proposed Settlement.

1.   *Plaintiff and Counsel Have Adequately Represented the Class*

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. Rule 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See id.*, Adv. Comm. Note. Formal discovery is not required, but counsel should have sufficient information to make informed decisions at the bargaining table. *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1081 (D. Minn. 2009) noting that adequacy requirements satisfied due to "Counsel's investigation and identification of plaintiffs' potential claims; experience in handling similar matters; demonstrated knowledge of applicable law; and commitment to advancing resources for adequate class representation". Here, Class Counsel were well prepared to negotiate a beneficial settlement for Class Members. In addition to a comprehensive pre-filing investigation, they sought early discovery that went to the heart of the case and had extended negotiations with Defendant. Van Note Decl. ¶¶ 7, 10-13. Representative Plaintiff will request a service payment of $2,500 for their participation in this litigation. Representative Plaintiff researched and identified qualified counsel, participated in the mediation settlement process, and risked being further targeted for identity theft by putting their name on this litigation.

2. *The Settlement Resulted from Informed, Arm's-Length Negotiations*

A "settlement that is the product of arm's-length negotiations conducted by experienced counsel is presumed to be fair and reasonable." *Lees v. Anthem Ins. Cos.*, No. 4:13CV1411 SNLJ, 2015 U.S. Dist. LEXIS 74902, at \*4 (E.D. Mo. June 10, 2015). Here, the Parties' Settlement was reached after contentious negotiations consisting of two separate full day mediations, including the successful mediation with experienced mediator Hon. David E. Jones (ret.). Van Note Decl. ¶7. Taking into consideration the Parties' preparation for the mediation, the length of negotiations and the involvement of a highly qualified private mediator, the proposed Settlement should be presumed procedurally fair. Fed. R. Civ. P. Rule 23(e)(2)(B), 2018 Adv. Comm. Note.

3. *The Relief Provided for the Class Is Adequate*

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. NST's improved security protocols and policies are meaningful and will help minimize the risk of incidents of unauthorized access to NST customers' accounts. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C).

While Plaintiff believes her case is strong, ongoing litigation will require Plaintiff and the Class to take on significant risks of expenses, delays and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at \*32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at \*1 (S.D.N.Y. June 25, 2010) (collecting cases). This case is no exception. It involves tens of thousands

of Class Members, complicated and technical facts, a well-funded and motivated Defendant and contested central issues relating to class certification, liability, and damages. Defendant would surely oppose class certification and move for summary judgment. Establishing liability for such a breach at trial would require countless hours of costly investigation, discovery, reporting, and testimony from data security and financial industry expert witnesses. Even if these were all successful, given the relative novelty of the legal theories underlying Plaintiffs' claims it could face significant scrutiny on appellate review.

4.    *The Settlement Structure Is Fair, Effective, and Reasonable*

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members may have suffered varying types and degrees of injury, the Settlement permits Settlement Class Members to receive cash payments consistent with the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in the corresponding amount. In this respect, the Settlement achieves customized recovery to each Class Member and treats them fairly and equitably. As such, this type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g.*, *In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), aff'd, *Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

The claims process here is designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment of potential individual damages. All Settlement Class Members may submit a claim that allows them to elect benefits, depending on their individual facts.

Claimants can claim out-of-pocket expenses for unreimbursed payment card fees or bank fees, cell, internet or text charges; unreimbursed costs or charges for obtaining credit reports, credit freezes or credit monitoring or identity theft protection services, postage costs and lost time. They simply check the relevant box and input the amount claimed. S.A., **Ex. C**.

Courts have approved similar processes in data breach cases (*see, e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *12), and the proposed plan here is favorable by comparison to numerous other Settlements requiring documentation for analogous cash payments (*see, e.g.*, *In re Anthem*, 327 F.R.D. at 325, 328, 332 (approving claim process requiring supporting documentation for claims of lost time and out-of-pocket expenses)). Class Counsel expects that the claims-rate will be between 1% and 9%. This claims rate would not be unusual for a data breach class settlement. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021); *In re Anthem Data Breach*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (1.8% claims rate in data breach settlement); *In re Premera Blue Cross Data Breach*, Case No. 3:15-md-02633 (D. Or.) (7.81% claims rate); *Gaston v. Fabfitfun*, Case No. 2:20-cv-09534 (C.D. Cal.) (5.27% claims rate).

## 5.    *The Settlement Falls Within the Range of Possible Approval*

"Preliminary approval does not require the court to decide the ultimate question whether a proposed settlement is fair, reasonable, and adequate. At this stage, the issue is whether the proposed settlement falls within the range of    fairness    so    that    notice    of    the proposed settlement should be given to class members and a hearing scheduled to consider final approval." *Komoroski v. Serv. Partners Private Label, Inc.*, No. 4:16-CV-00294-DGK, 2017 U.S. Dist. LEXIS 119292, at *3 (W.D. Mo. July 31, 2017) Plaintiff has analyzed the potential class

recovery and offers the following explanation of the factors bearing on the amount of the compromise:

Defendant reported that 15,600 individuals were potentially affected by this security incident. As noted above, the Data Security Incident involves names and other personal information. Since Plaintiff was the only individuals to come forward and file a lawsuit, it is unclear how many of these 15,600 individuals will claim injury. Indeed, it follows that most, if not all, individuals who experienced unauthorized charges to their accounts would have been reimbursed by their bank or card issuer pursuant to federal law[2] (though Class Members may still claim unreimbursed card or bank fees). Accordingly, the remaining compensable claims are for lost time and modest damages for out-of-pocket expenses (e.g., postage, paying for credit freezes, etc.). Given that few if any Class Members would be able to prove damages over $500 at trial, the settlement's reimbursement of ordinary losses up to $5,000 plus *pro rata* distribution represents more than enough to satisfy the vast bulk of potential claims, given the nature of the information involved here. Given the type of information involved, this represents an excellent outcome for the Class. Van Note Decl. ¶ 23. Indeed, the Settlement compares favorably with other Settlements that have been approved in data breach matters. For example, the chart at Van Note. Decl. ¶ 24 identifies the per-class member value based on the common fund settlement amount for certain recent cases that involved sensitive, private information.

6.    *Experienced Counsel Recommend Approval*

Class Counsel have substantial experience in complex class action litigation, including data privacy cases. Van Note Decl. ¶¶ 17, 22-24. Class Counsel fully endorse the Settlement as falling within the range of reasonableness. Van Note Decl. ¶¶ 2-24.

---

[2] *See e.g.*, the Fair Credit Billing Act (15. U.S.C. 1666, *et seq*.).

7.     *The District's Procedural Guidelines for Preliminary Approval Are Satisfied*

In addition to the requirements for Settlement approval established by Rule 23(e), the proposed Settlement also satisfies the District's Procedural Guidance for Class Action Settlements. The guidelines are addressed throughout this Motion and supporting papers.

**B.     The Proposed Settlement Class Should be Certified**

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. Rule 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

1.     *The Class Meets the Requirements of Rule 23(a)*

**Numerosity.** The Settlement Class consists of approximately 15,600 individuals, making joinder of all members impracticable. Fed. R. Civ. P. Rule 23(a)(1).

**Commonality.** Plaintiff's and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For example, Plaintiff's negligence claim turns on the contention that Defendant implemented sub-standard security protocols and procedures that allowed unauthorized users to gain access to Class Members' information. Additionally, Plaintiff's breach of contract claim turns on the common contentions that NST promised yet failed to use certain specific security measures. Each of these contentions depend only on the nature of Defendant's security protocols, which will be proven using generalized evidence applicable to the entire Class. *See In re Yahoo!*, 2020 WL 4212811 at *3 (certifying data breach settlement class where common issues existed as to whether Yahoo! employed sufficient security measures to protect class members' personal information).

-11-

**Typicality.** The typicality requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018). Here, Plaintiff's claims are typical of the Settlement Class as they are customers who experienced incidents of unauthorized access to their information.

**Adequacy.** The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. This requirement serves to uncover conflicts of interest between named parties and the class they seek to represent." *Thornburg v. Ford Motor Co.*, No. 4:19-cv-01025-NKL, 2022 U.S. Dist. LEXIS 168354, at *18-19 (W.D. Mo. Sep. 19, 2022) (internal citations and quotation marks omitted). Plaintiff is an adequate representative of the Settlement Class, as she actively participated in the litigation and continues to do so. Van Note Decl. ¶¶ 15, 20. She does not have conflicts with other Class Members as her claims are co-extensive with those of the class, *Kent v. Hewlett-Packard Co.*, 2011 WL 4403717, *1 (N.D. Cal. Sept. 20, 2011), and she has retained experienced counsel to represent the Class's interests. *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). Class Counsel have decades of experience representing plaintiffs in complex class actions, including other cases involving data privacy and cybersecurity. Van Note Decl. ¶¶ 17,22-23. They also vigorously pursued Plaintiff's claims, engaging in extensive Settlement negotiations.

## 2. *The Class Meets the Requirements of Rule 23(b)(3)*

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016).

Because Plaintiff's claims are focused on the nature of NST's security policies and protocols, they are well-suited for class treatment. NST's liability can be established largely, if not entirely, through class-wide evidence. There would be little need for Class Members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings as to the amount of damages is not enough to defeat class certification. The "need for individual damages calculations does not, alone, defeat class certification". *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 553 (W.D. Mo. 2017); *In re Yahoo!*, supra, 2020 WL 4212811 at *7 (court found common questions regarding the nature of Yahoo's security measures predominated).

**Superiority.** Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets several factors.[3]

In the context of these factors, the instant matter is superior as a class action as there is low interest in prosecuting a multitude of claims in a variety of forums and otherwise doing so in this matter would be overly laborious to the individual Class Members and the Courts. However, given that this case is in settlement context, the Court need not consider manageability issues because "the proposal is that there be no trial;" as such, manageability considerations are no obstacle to certification for purposes of Settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

---

[3] "The matters pertinent to the findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action."

Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Defendant. *See,* e.g., *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) Resolution of the predominant issues of fact and law via individual actions is impracticable because the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See, Mayo v. USB Real Estate Sec., Inc.,* No. 08-00568-CV-W-DGK, 2011 U.S. Dist. LEXIS 31390, at *22 (W.D. Mo. Mar. 25, 2011) ("the Court finds the cost of litigating an individual claim against Defendants is so high that no individual plaintiff could likely afford to bring a lawsuit, much less a member of the putative class here […] Additionally, an individual class member's potential recovery is not sufficiently high that a qualified attorney would be willing to take on an individual case for a contingency fee. An individual claim that is potentially worth thousands of dollars is likely to be a "negative value" case when brought against large financial institutions with almost unlimited resources to litigate, even when … attorneys' fees are available to a prevailing plaintiff."

The class device is the superior method of adjudicating consumer claims against Defendant arising from data breaches because it promotes greater efficiency, and no realistic alternative exists. *See, e.g.*, *In re Yahoo!*, *supra*, 2020 WL 4212811 at *8; *In re Equifax*, 2020 WL 256132 at *45.

### C.    The Proposed Notice and Notice Program Meet All Applicable Requirements

*1.    The Notice Plan Uses the Best Practicable Means to Reach Class Members*

The federal rules require that, before final approval of a Settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. Rule 23(e)(1)(B). Where certified under Rule 23(b)(3), the notice must also be "best notice practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B). The notice plan meets these requirements. It provides for direct electronic or mailed notice to the 15,600 Class Members. This Notice is reasonably calculated to reach all Class Members and apprise them of the Settlement.

> 2. _The Proposed Notice Adequately Informs Class Members of Their Rights and Options_

In accordance with Rule 23(c)(2)(B) and this District's procedural guidelines, the Notice (S.A. Ex. B) sets forth in clear, concise and easily understood language all requisite information, including, _inter alia_, the nature of the action, the class definition, claims, issues, or defenses, the binding effect of a class judgment and all available rights under the Settlement.

### D.    Settlement Class Counsel Should be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. Rule 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. Rule 23(g)(1)(A)(i-iv).

Here, Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data privacy cases. Van Note Decl. ¶¶ 18-25, 31-33. Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Laura Van Note of Cole & Van Note as Class Counsel.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant preliminary approval of the Class Action Settlement.

Dated: November 4, 2024

**COLE & VAN NOTE**

By:    */s/ Laura Van Note*
Laura Van Note, Esq.
(E.D. M.O. Bar No. 310160CA)
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:      (510) 891-9800
Facsimile:       (510) 891-7030
Email:         lvn@colevannote.com

Attorneys for Representative Plaintiff
and the Proposed Class

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 04, 2024, I electronically filed the  foregoing

document with the Clerk of the Court using CM/ECF. I also certify the foregoing document

is being served today on all counsel of record in this case via transmission of Notice of

Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective

emails per the below service list.

*/s/Laura Grace Van Note*
Laura Grace Van Note, Esq.