# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| SUSAN GARBARINO, individually and on, behalf of all others similarly situated, | ) Case No. 6:23-cv-03129-SRB |
| | ) |
| | ) **CLASS ACTION** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NAHON, SAHAROWICH, & TROTZ, PLC, | ) |
| | ) |
| Defendant. | ) |

## SUGGESTIONS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  SUMMARY OF THE LITIGATION ....................................................................................1

III. LEGAL ARGUMENT ...........................................................................................................3

    A.  The Percentage-of-the-Fund Approach ................................................................... 3

    B.  The Fee is Reasonable and Supported by the *Johnson* Factors.............................. 4

        1.  The benefits conferred on the Settlement Class are substantial. ........................4

        2.  Class Counsel faced numerous and substantial risks. .........................................5

        3.  Class Counsel is exceptionally skilled. .................................................................8

        4.  The reaction of the Class supports Class Counsel's requested fee. ....................9

        5.  The requested fee is less than or comparable to other awards in the Eighth Circuit and other awards in data breach cases. .................................................9

    C.  The Requested Fee Is Reasonable Under a Lodestar Crosscheck......................... 10

    D.  THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES. ........... 10

    E.  THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD. 11

IV. CONCLUSION ...................................................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**

*Barfield v. Sho-Me Power Elec. Co-op.*,
   No. 2:11-CV-4321-NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) .......................... 3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 478 (1980) ....................................................................................................... 3

*Caligiuri v. Symantec Corp.*,
   855 F.3d 86, 867 (8th Cir. 2017) ......................................................................................... 11

*George v. Academy Mortgage Corporation (UT)*,
   369 F. Supp. 3d 1356, 1378 (N.D. Ga. 2019) ...................................................................... 5

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 ................................................................ 5

*Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*,
   714 F.2d 823, 825 (8th Cir. 1983) ......................................................................................... 4

*Hensley v. Eckerhart*,
   461 U.S. 424, 436 (1983) ....................................................................................................... 4

*Huyer v. Buckley*,
   849 F.3d 395, 399 (8th Cir. 2017) ......................................................................................... 9

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362, 1366 (N.D. Cal. 1996) .......................................................................... 10

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, MDL No. 2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ...... 5

*In re Target Corp. Customer Data Security Breach Litig. ("Target")*,
   892 F.3d 968, 977 (8th Cir. 2018) .............................................................................. 3, 6, 8, 9

*In re UnitedHealth Group Inc. PSLRA Litig.*,
   643 F. Supp. 2d 1094, 1104 (D. Minn. 2009) ....................................................................... 4

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980, 991 (D. Minn. 2005) ................................................................... passim

*In re: Anthem, Inc. Data Breach Litigation,*
   327 F.R.D. 299 (N.D. Cal 2018) ........................................................................................... 9

*Johnson v. Ga. Highway Express, Inc.,*
   488 F.2d 714, 719–20 (5th Cir. 1974) ............................................................................. 3, 7

*Keil v. Lopez*,
   862 F.3d 685, 701 (8th Cir. 2017) ...................................................................................... 10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140, 1157 (8th Cir. 1999) .................................................................................... 3

*Rawa v. Monsanto Co.*,
   934 F.3d 862, 870 (8th Cir. 2019) ....................................................................................... 3

*Swinton v. SquareTrade, Inc.*,
   454 F. Supp. 3d 848, 886 (S.D. Iowa 2020) ......................................................................... 3

*Tussey v. ABB, Inc.*,
   No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) ............ 3, 4, 5, 10

*West v. PSS World Med., Inc.,*
   No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150, at *3, 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014) ........................................................................................................................... 3

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) ............................................................. 4, 6, 10

**Other Authorities**

Theodore Eisenberg, Geoffrey Miller, & Roy Germano, *Attorney Fees in Class Action: 2009–2013*, 92 N.YU. L. Rev. 937, 952 (2017) ................................................................................. 9

I.      **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure Rule 23(h) and 54(d)(2) and this Court's Preliminary Approval Order (Doc. 31) Plaintiff seeks approval of: (a) Attorneys' Fees in the amount of $77,492 (i.e. one-third of the total settlement fund), (b) litigation costs in the amount of $3,429 and (c) a Service Award of $2,500 for Representative Plaintiff. These payments are consistent with the terms of the preliminarily approved Settlement Agreement ("SA") (Doc. 30-1). This Motion is unopposed. Plaintiff will file a proposed Order regarding the requested relief in this Motion as part of the forthcoming filing in Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

II.     **SUMMARY OF THE LITIGATION**

Plaintiff's forthcoming Unopposed Motion for Final Approval of Class Action Settlement details the underlying facts. Plaintiff filed the Complaint on October 20, 2023 alleging (i) Negligence, (ii) Breach of Implied Contract and (iii) Breach of the Implied Covenant of Good Faith and Fair Dealing. Prior to filing the Action, Class Counsel was armed with a detailed factual understanding of Defendant's operations and data breaches in general. Decl. of Laura Van Note ("Van Note Decl.") ¶ 3.

The Parties then engaged in informal discovery efforts, including a voluntary exchange of confirmatory information to facilitate settlement discussions. The information made available to Proposed Class Counsel prior to the final mediation was sufficient to place Proposed Class Counsel, an experienced class action litigator, in a position to explore settlement. Van Note Decl. ¶ 4.

After the filing of the Action, NST filed an answer to the Complaint. The parties mediated, pursuant to the Court's Order, on March 18, 2024, engaging the Honorable Mark Seigel of United

1

States Arbitration & Mediation, but they did not reach a compromise. Shortly after, both parties served discovery. The parties subsequently engaged the Honorable David E. Jones (former United States Magistrate Judge) of Resolute Systems, LLC as a mediator to oversee a second mediation of the Action on July 23, 2024, which was successful. At mediation, the Parties exchanged information and documents, including a substantial amount of information requested in Plaintiff's prior informal discovery requests, and engaged in intensive discussions regarding their evaluations of the litigation and various aspects of the litigation, including the risks and delays of further litigation, the risks to the Settling Parties of proceeding with class certification, the law relating to the allegations and the evidence produced and analyzed and the possibility of appeals, among other things. Due to the Parties' extensive experience in data breach and class action litigation, the Parties were able to determine the principle of the matter relatively quickly and spent the majority of the mediation discussing the nature of and size of the proposed Settlement Fund. The Parties were able to come to an agreement at mediation and ended the mediation session with a settlement in principle. No side agreements were made (i.e., the Settlement Agreement is the only agreement between the Parties). Van Note Decl. ¶ 5.

The Parties diligently worked on a Notice Plan, Notices, Claim Forms and other exhibits alongside the long-form settlement agreement until filing the Motion for Preliminary Approval. Many redline drafts were exchanged. The long-form Settlement Agreement was finalized and signed as of November 4, 2024. The requested Attorneys' Fees of $77,492 are only one-third of the total Settlement fund and will, almost certainly, represent a negative multiplier on Proposed Class Counsel's lodestar by the time of Final Approval, considering that Proposed Class Counsel has vigorously litigated this matter including attending two mediations to bring about a successful resolution of this matter. Van Note Decl. ¶ 6.

2

On January 28, 2025 this Court preliminarily approved the Settlement and ordered that notice be given to the Class. (Doc. 31). Van Note Decl. ¶ 7.

### III. LEGAL ARGUMENT

#### A. The Percentage-of-the-Fund Approach

When Class Counsel have negotiated a class action settlement, they are entitled to petition the Court to award attorneys' fees and costs for their success. "Under the 'common fund' doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds." *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) (citing Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

District courts in this Circuit typically use the "percentage-of-the-fund method" in awarding attorneys' fees in a common-fund case such as this. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) ("*Xcel Energy*") (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). Indeed, some courts have suggested that using the "'percentage of the fund method may be preferable.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-4321-NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.,* No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150, at *3, 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014)).

"[T]he ultimate reasonableness of the award is evaluated by considering relevant factors from the twelve factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974)." *In re Target Corp. Customer Data Security Breach Litig.* ("*Target*"), 892 F.3d 968, 977 (8th Cir. 2018) (cleaned up). To be sure, "[m]any of the *Johnson* factors are related to

3

one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). Therefore, courts in the Eighth Circuit often focus on the most relevant *Johnson* factors in evaluating fee requests. *See Xcel Energy*, 364 F. Supp. 2d at 993; *Tussey*, 2019 WL 3859763, at *2; *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010); *see also Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983).[1] These factors are discussed in more detail below.

      **B.**       **The Fee is Reasonable and Supported by the *Johnson* Factors.**

Class Counsel seeks Attorneys' Fees of $77,492, or one-third of the total gross settlement fund. Here, the requested fee is more than reasonable under the *Johnson* factors.

           **1.**       **The benefits conferred on the Settlement Class are substantial.**

First and foremost, the settlement represents a significant recovery for the Class. "In considering a fee award, the 'most critical factor' is 'the degree of success obtained.'" *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1104 (D. Minn. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Here, Class Counsel has made a substantial fund of $232,500 available to Class Members, who would otherwise be unrepresented. The benefits of the Settlement are explained at length in Plaintiff's Unopposed Motion for Final Approval, but in summary, Class Members who submit a claim will more than likely be made whole by the Settlement given that based on the limited information accessed in the Data Breach, few if any Class Members would be able to prove damages over $500 at trial. Van Note Decl. ¶ 14.

---

[1] The nature of the attorney-client relationship does not apply and thus can be disregarded or treated as neutral in considering the fee.

### 2. Class Counsel faced numerous and substantial risks.

Making the degree of success even more remarkable, Class Counsel obtained a significant settlement in the face of substantial risks. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *Xcel Energy*, 364 F. Supp. 2d at 994). "Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3. Critically, "[t]he risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *Xcel Energy*, 364 F. Supp. 2d at 994.

Data breach litigation is difficult and presents cutting edge issues. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."); *accord In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, MDL No. 2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019). The "novelty and difficulty of the issues" here favor approving the requested fee, particularly because the novelty and difficulty "created significant risk for Class Counsel." *George v. Academy Mortgage Corporation (UT)*, 369 F. Supp. 3d 1356, 1378 (N.D. Ga. 2019). Indeed, the risks identified above illustrate the novelty and difficulty of the issues in this case.

The risk, expense and complexity of further litigation in this case is significant. If the case were to proceed without settlement, the Parties will face the following hurdles: (1) expensive and extremely time-consuming ESI-related discovery efforts that often involve developing appropriate ESI protocols and then compiling and reviewing voluminous document productions of a highly technical nature; (2) due to the complexity of the ESI, the Parties will almost certainly need to retain cybersecurity experts who can parse and evaluate the data among other issues and

5

(3) substantial motion practice on an array of issues such as standing, causation, damages and injunctive relief. There is also substantial risk in Plaintiff obtaining and maintaining class certification. Class certification outside the settlement context poses a significant challenge. Van Note Decl. ¶ 8.

Taking this case to trial and evaluating potential damages would be highly risky as few, if any, data breach trials have been conducted. The reality is that even if Plaintiff did successfully obtain a substantial verdict, there are significant questions whether this particular Defendant (which is not a large entity with deep pockets) can satisfy the judgment. In short, without the Settlement, the parties would face years of risk, uncertainty, complexity and expense, and these challenges would remain through certification, trial and appeals. All of these issues would persist without any guarantee of relief for the class. Van Note Decl. ¶¶ 9-10.

The timeliness with which Class Counsel obtained this significant relief on behalf of the Class, i.e. nine months of litigation from the time the Complaint was filed to mediation, is independently valuable and weighs in favor of a substantial fee.[2] Efficiency—and providing expeditious relief—is best for the Class, the Court and the Defendant. *See Yarrington*, 697 F. Supp. 2d at 1062 ("[T]he Settlement Class will receive settlement benefits faster than they would receive awards obtained after trial and a likely appeal."); *Xcel Energy*, 364 F. Supp. 2d at 1001 ("[C]ontinued litigation, which could have extended several years, would have delayed recovery by the Class. Instead, the settlement immediately confers benefits."). Indeed, "time limitations imposed by the client or the circumstances" (*see Target*, 892 F.3d at 977 n.7) is a factor weighing

---

[2] To be sure, efficient resolution is not an indication that victory was assured. *See Swinton*, 454 F. Supp. 3d at 886 ("[A]lthough the parties agreed to a settlement early on in the litigation, this was not an easy case.")

6

in favor of a larger fee award. *See Equifax*, 2020 WL 256132, at *33 ("Priority work done under significant time pressure is entitled to additional compensation and justifies a larger percentage of the recovery."); *accord Johnson*, 488 F.2d at 718.

Efficient resolution in data breach litigation is particularly important. First, the release of confidential data puts the Class immediately at risk, meaning the ameliorative effect of the Settlement can have the most impact when delivered as near as possible to the breach. Second, Class Members can be harmed in the future. Lastly, achieving an early result means more Class Members will have necessary records readily available to make documented claims. Van Note Decl. ¶ 11.

The Parties were able to avoid substantial pleading challenges, motion practice and discovery by resolving their disputes, and the ultimate dispute, with minimal court intervention. In an effort to decrease legal fees, and while staying firm in their positions when needed, the Parties cooperated with each other. This focus on settlement (instead of padding Class Counsel's lodestar with unnecessary/excessive litigation) undoubtedly left more funds available to put toward the settlement, as opposed to those available funds being depleted as defense litigation costs/fees. CVN has devoted over 212 hours of time to this litigation, faced significant risks in the prosecution of these matters and, more importantly, provided a substantial benefit to otherwise unrepresented individuals. Class Counsel's efforts include, *inter alia*, briefing the Motion to Dismiss, conducting informal discovery in preparation for mediation, analyzing data for mediation, engaging in a full day of mediation, preparation of the Settlement Agreement and exhibits thereto, working with the Settlement Administrator and defense counsel on notices and logistics of the notice plan, monitoring the claims process and drafting the Motions for preliminary and final approval. In all, when compared to other data breach settlements, the value

provided to the Settlement Class here is significant, and the fees modest and well-deserved.[3] Van Note Decl. ¶ 12. As was true in *Xcel Energy*:

> But for the cooperation and efficiency of counsel, the lodestar of plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its management of the case. Instead, counsel moved the case along expeditiously, and the court determines that the time and labor spent to be reasonable and fully supportive of the [requested] attorney fee.

364 F. Supp. 2d at 996. As with the substantial amount of time Class Counsel expended to efficiently resolve this litigation, the significant commitment of time in the future supports Class Counsel's requested fee.

### 3.  Class Counsel is exceptionally skilled.

Class Counsel has significant experience in litigating data breach matters. *See Target*, 892 F.3d at 977 n.7 (considering "the experience, reputation, and ability of the attorneys"). CVN, which was founded in 1992, is a specialized practice devoted almost exclusively to prosecuting class action matters and has so engaged in that area of practice for the near entirety of its existence. In its over 30-year history, CVN has prosecuted hundreds of class and/or

---

[3] But for this case, Class Counsel would have spent significant time on other matters. *See Target*, 892 F.3d at 977 n.7 (considering "the preclusion of employment by the attorney due to acceptance of the case"). Furthermore, although not commonly discussed in connection with requests for attorneys' fees and costs, it is also important to note there is often a significant amount of work to be done post-final approval of a class action settlement, none of which ever gets presented to the Court for consideration (and which is, thus, not directly compensable). Indeed, it is rare that CVN is not responding to email/calls/requests from class members, CPAs, attorneys, the press, etc., sometimes even years after final settlement approval. CVN staff routinely gets requests from settlement class members seeking information post-resolution about the settlement itself, factual and legal issues addressed in the case, the tax characteristics of the amounts class members received, and a host of other issues too numerous to list exhaustively here. Except by noting its near-inevitability, none of that future work or the attendant costs are reflected in anything filed thus far in this litigation, but that work will almost certainly be required by CVN here and should be factored into the equation regarding the appropriate fee and cost recovery.

complex/representative cases. A selection of some of the more unique cases are identified in the firm's professional resume. Here, Class Counsel achieved substantial relief for the Class, which demonstrates that they possessed "the skill requisite to perform the legal service properly." *Target*, 892 F.3d at 977 n.7.

4. **The reaction of the Class supports Class Counsel's requested fee.**

To date, no Class Members have objected to the Settlement and/or to Class Counsel's requested fee. This lack of opposition indicates that the Class overwhelmingly supports the Settlement and that the requested fee is reasonable. Van Note Decl. ¶ 19.

5. **The requested fee is less than or comparable to other awards in the Eighth Circuit and other awards in data breach cases.**

The requested Attorneys' Fees of one-third of the gross settlement fund is in line with—if not substantially lower than—awards in other class actions that have resulted in similarly impressive settlements. In assessing this factor, Eighth Circuit courts look to similar fee awards in class actions within the Eighth Circuit generally, as well as to fee awards in similar litigations in other circuits. *See Xcel Energy*, 364 F. Supp. 2d at 998. In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017).

The requested percentage is similar to awards in other data breach cases across the country. *See, e.g.*, *In re: Anthem, Inc. Data Breach Litigation* 327 F.R.D. 299 (N.D. Cal 2018) (approving a 27% fee award on a $115 million common fund in a data breach case).

Of course, these results in data breach cases align with complex consumer litigation more generally. *See* Theodore Eisenberg, Geoffrey Miller, & Roy Germano, *Attorney Fees in Class Action: 2009–2013*, 92 N.YU. L. Rev. 937, 952 (2017) (finding that the mean fee percentage in consumer class actions was 26% between 2009 and 2013); *see also Target*, 892 F.3d at 977 n.7

9

(considering "the customary fee"). Complex consumer litigation customarily is handled on a contingent fee basis because consumers are unwilling and unable to pay substantial hourly rates, and the potential recovery does not justify the economic investment. *See Target*, 892 F.3d at 977 n.7 (considering "whether the fee is fixed or contingent"). Contingent fees in consumer cases are typically in the range of 33.3% to 40% of the recovery. *See Tussey*, 2019 WL 3859763, at *4 ("'Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.")

### C. THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSSCHECK.

Although a lodestar crosscheck is "not required" in the Eighth Circuit, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017), doing so here confirms that the requested fee is reasonable and should be approved. As noted above, Class Counsel have spent over 212 hours as of the filing of this Motion on this litigation. These hours account for an overall lodestar of over $75,300 at current rates. Van Note Decl. ¶ 12. Considering the substantial relief Class Counsel expediently obtained in the face of potentially drawn-out litigation with severe risks and an uncertain outcome, the lodestar crosscheck confirms Class Counsel's requested fee is warranted.

### D. THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES.

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.'" *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Over the course of this litigation, Class Counsel incurred ordinary litigation costs totaling $3,429 as of the filing of this Motion and anticipate incurring additional expenses for making future appearances, etc. Such costs were reasonable,

necessary and are appropriate for reimbursement. Because the costs incurred by Plaintiff's counsel were reasonable and necessary, the Court should approve reimbursement.

### E. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD.

Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. The factors for deciding whether the service awards are warranted are: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri v. Symantec Corp.* 855 F.3d 86, 867 (8th Cir. 2017).

The Court should approve the Service Award for the named Plaintiff in the amount of $2,500 for Plaintiff's efforts and for her courage in stepping forward. Plaintiff was available as a proposed class representative, filed a lawsuit and worked with her attorneys as needed throughout the litigation. Plaintiff was available for questions and to supply documents to her attorneys and helped vigorously litigate the case. Plaintiff expended time and resources that other Class Members did not in litigating her case. Her efforts should be rewarded. The Service Award is to be paid out separately from any Class Member compensation, making its impact on the Class minimal. Class Counsel is not aware of any antagonism or conflict of interest between Plaintiff and the putative Class. In fact, Plaintiff has been appropriately involved in this case and has stayed in routine contact with CVN. Additionally, she assisted with the prosecution efforts that included frequent emails and telephone calls with counsel. Van Note Decl. ¶ 17. The proposed Service Award is in the range of similar awards granted in the Eighth Circuit.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant this Motion and award Class Counsel their Attorneys' Fees and Costs as well as approve a Service Award to Plaintiff.

Dated:  April 11, 2025

Respectfully Submitted,

By: */s/ Laura Van Note*
Laura Van Note, Esq.,
(E.D. M.O. Bar No. 310160CA)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
Email:     lvn@colevannote.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

*/s/Laura Grace Van Note*
Laura Grace Van Note, Esq.