UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN GARBARINO, individually, and on behalf of all others similarly situated, | ) Case No. 4:23-cv-01326-JMB ) ) **CLASS ACTION** |
| Plaintiff, | ) |
| v. | ) ) |
| NAHON, SAHAROVICH, & TROTZ, PLC and DOES 1 through 100, inclusive, | ) ) ) ) |
| Defendants. | ) ) |

# PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rules of Civil Procedure Rule 23(e), Plaintiff Suan Garbarino moves for entry of an Order Granting Final Approval of Class Action Settlement. This Motion is based upon the accompanying Memorandum in Support and Declaration of Laura Van Note and Plaintiff's Unopposed Motion for Attorneys' Fees, Costs and Service Award (Doc. 32). Plaintiff respectfully requests that the Court enter the proposed Final Approval Order submitted contemporaneously herewith.

Dated:  August 19, 2025                                   Respectfully Submitted,

By: /s/ Laura Van Note
    Laura Van Note, Esq., ED of MO# 310160CA
    **COLE & VAN NOTE**
    555 12th Street, Suite 2100
    Oakland, California 94607
    Telephone: (510) 891-9800
    Facsimile:  (510) 891-7030
    Email:    lvn@colevannote.com

1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| SUSAN GARBARINO, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>v.<br><br>NAHON, SAHAROVICH, & TROTZ, PLC and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No. 4:23-cv-01326-JMB<br><br>**CLASS ACTION** |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

i

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS ...............................................2

III. CASE SUMMARY ................................................................................................................3

    A. Factual Allegations ........................................................................................................ 3

    B. Litigation History .......................................................................................................... 3

IV. LEGAL ARGUMENT ...........................................................................................................4

    A. The Settlement Falls Within the Range of Reasonableness ...................................... 5

        1. Plaintiff and Counsel Have Adequately Represented the Class ........................6

        2. The Settlement Resulted from Informed, Arm's-Length Negotiations ............6

        3. The Relief Provided for the Class Is Adequate .....................................................7

        4. The Settlement Structure Is Fair, Reasonable, and Adequate ..........................8

        5. The Settlement Falls Within the Range of Possible Approval ..........................9

        6. Experienced Counsel Recommend Approval .....................................................10

V. ATTORNEYS' FEES, COSTS, SERVICE AWARD AND SETTLEMENT ADMINISTRATION FEES ..................................................................................................10

    A. Class Counsel should be awarded their attorneys' fees and costs ........................ 10

    B. Plaintiff should receive a Service Award ................................................................ 10

    C. Reimbursement of Settlement Administration fees is appropriate ...................... 11

VI. CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bellows v. NCO Fin. Sys., Inc.*,
  No. 07-CV-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .......................... 4

*Cohn v. Nelson*, 3
  75 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................... 4

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................. 9

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................................................... 7

*Holden v. Burlington N., Inc.*,
  665 F. Supp. 1398 (D. Minn. 1987) ...................................................................... 9

*Huyer v. Njema*,
  847 F.3d 923 (8th Cir. 2017) ............................................................................... 11

*In re Anthem Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal 2018) ........................................................................ 7, 9

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
  2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ......................................................... 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..................................................... 7, 9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .................................................................................... 4

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ............................................................................... 4

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................................................... 9

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990) ............................................................................... 4

*Marcus v. Kansas*,
  209 F. Supp. 2d 1179 (D. Kan. 2002) .................................................................................... 6

*Marshall v. Nat'l Football League*,
  787 F.3d 502 (8th Cir. 2015) ................................................................................................... 4

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................... 9

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ................................................................................................. 4

*Quality Plus Servs. V. Nat'l Union Fire Ins. Co.*,
  U.S. Dist LEXIS 7337 (E.D. Va 2020) .................................................................................... 8

*Schwartz v. Yahoo! Inc.*,
  No. 20-16633 (9th Cir. June 27, 2022) ..................................................................................... 9

*Sciaroni v. Target Corp. (In re Target Corp. Customer Data Sec. Breach Litig.)*,
  892 F.3d 968 (8th Cir. 2018) ................................................................................................. 10

*Stephens v. U.S. Airways Group, Inc.*,
  102 F. Supp. 3d 222 (D.D.C. 2015) ......................................................................................... 4

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... 5-7

**Other Authorities**

2018 Adv. Comm. Notes ........................................................................................................ 5, 7

I.      **INTRODUCTION**

On January 28, 2025, this Court preliminarily approved the Settlement between Plaintiff Susan Garbarino and Defendant Nahon, Saharovich, & Trotz, Plc ("Defendant"), and ordered that notice be given to the Class. (Doc. 31) The Settlement negotiated on behalf of 15,435 Class Members establishes a $232,500 Settlement Fund. Settlement Class Members who submitted a valid claim may elect one of the following benefits that will be paid from the Settlement Fund: (i) monetary reimbursement of up to $5,000 for Out-of-Pocket Losses resulting from the Data Breach, or (ii) an alternative *pro rata* cash payment.

After this Court granted preliminary approval, Settlement Administrator Epiq successfully disseminated Notice to the Settlement Class. Notice of the Settlement reached the vast majority the Class (92.7%), easily meeting the due process standard. *See* Declaration of Scott M. Dicarlo Regarding Implementation of Notice and Claims Administration (DiCarlo Decl.) ¶¶ 7-13. To date, Epiq has received 927 claim forms. DiCarlo Decl. ¶ 21. Importantly, *no Settlement Class Members have opted out or objected*, which demonstrates tremendous support for the Settlement. DiCarlo Decl. ¶¶ 19-20.

As discussed below, the proposed Settlement satisfies Federal Rules of Civil Procedure Rule 23(e)(2)'s requirements that a class settlement be fair, reasonable, and adequate, and Plaintiff respectfully requests that the Court grant this Motion and issue final approval of the Settlement. Plaintiff and Class Counsel further request that the Court approve a reasonable service award of $2,500 to the Representative Plaintiff, attorneys' fees of $77,492, litigation expenses of $3,429.[1] Finally, Plaintiff seeks reimbursement of Epiq's Settlement Administration Costs of $58,000.

---

[1]     Plaintiff's Unopposed Motion for Attorneys' Fees, Costs and Service Award (Doc. 32) details this requested relief at length.

1

## II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS

Class Counsel refers to the preliminarily-approved Class Action Settlement and Release as "SA" in this Motion. (Doc. 30-1, Exhibit A). Under the SA, Defendant will fund a $232,500 non-reversionary common fund to resolve this Action. SA § 41. Further key terms include:

*Class Definition.* The Settlement Class is defined as "all individuals within the United States of America whose Personal Information was potentially exposed to unauthorized third parties as a result of the Data Security Incident."

Excluded from the Settlement Class are: (a) Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, (b) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, (c) any and all federal, state, or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, (d) and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. SA § 38.

*Attorneys' Fees and Costs.* As discussed in Plaintiff's accompanying attorneys' fees motion, Class Counsel seeks an award of attorneys' fees of $77,492 and litigation costs of $3,429. (Doc. 32.) *See also* SA § 78 (providing for payment of attorneys' fees and costs).

*Service Award.* Pursuant to the terms of the SA, Plaintiff seeks a Service Award of $2,500 for her time, risk and effort in bringing this lawsuit, representing the large class, and in consideration for the claims released. (Doc. 32). The proposed Service Award is also reasonable given the minimal impact this amount will have on any settling Class Member's level of recovery.

*Settlement Administration Costs.* Defendant will pay Epiq's Settlement Administration Costs of $58,000, a reasonable amount given the size of the Class and the work required to send the

2

Notice, process settlement payments, establish and update a settlement website and communicate extensively with Class Members and Class Counsel. SA § 41.

### III. CASE SUMMARY

#### A. Factual Allegations

Plaintiff alleges unauthorized third parties exploited a vulnerability in Defendant's computer systems and accessed Defendant's network and accessed and/or exfiltrated Class Members' sensitive, non-public protected health information ("PHI") and personally identifiable information ("PII") (the "Data Security Incident"). Declaration of Laura Van Note ("Van Note Decl.") ¶ 3. Plaintiff alleges the Data Security Incident began on June 28, 2023 and that Defendant sent notice to potentially affected individuals beginning on September 12, 2023. Van Note Decl. ¶ 4. Plaintiff received such a notice on or around September 12, 2023, and subsequently filed suit in this Court seeking damages for the class for lost time, the threat of future harm, out-of-pocket expenses and other injuries related to this event. Van Note Decl. ¶ 5.

#### B. Litigation History

Defendant filed an answer to the Complaint. The Parties mediated pursuant to the Court's Order on March 18, 2024, but did not reach a compromise. Shortly after, both Parties served discovery. Van Note Decl. ¶ 6. The Parties mediated engaged the Honorable David E. Jones (former United States Magistrate Judge) of Resolute Systems, LLC as a mediator to oversee a second mediation of the Action on July 23, 2024, which was successful. Van Note Decl. ¶ 7.

Class Counsel has thoroughly investigated the key facts of this case. Declaration of Laura Van Note Decl. ¶ 8. Class Counsel's investigation, combined with the information exchanged in connection with mediation, provided Class Counsel with sufficient understanding about the relative strengths and weaknesses of the various claims and defenses at issue in this case to reach an informed

3

decision and a fair resolution. *Id.* On January 28, 2025, this Court preliminarily approved the Settlement and ordered that notice be given to the Class. (Doc. 31). Van Note Decl. ¶ 9.

## IV.   LEGAL ARGUMENT

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41 (4th ed.); *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). In this regard, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (D.D.C. 2015) (crediting the judgment of class counsel, who was experienced in litigating and settling complex cases including class actions, that the settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. (Doc 31). For the same reasons described in Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (Doc 30), this Court should certify the Class for purposes of final approval of the settlement. Next, the Court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *8 (D. Mont. Feb. 11, 2015). Plaintiff analyzes the relevant factors below.

### A.     The Settlement Falls Within the Range of Reasonableness

The 2018 amendments to Rule 23 direct the Parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. Rule 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id*. The two procedural concerns are (i) whether plaintiff and their counsel have adequately represented the class and (ii) whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. Rule 23(e)(2)(A)-(B). The two substantive concerns are (i) whether the relief provided for the class is adequate and (ii) whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Here, these four core concerns favor the proposed Settlement.

### 1. Plaintiff and Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. Rule 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See* Adv. Comm. Note.

Here, Class Counsel was well prepared to negotiate a beneficial settlement for Class Members. In addition to a comprehensive pre-filing investigation, Class Counsel sought early discovery that went to the heart of the case and had extensive negotiations with Defendant. Van Note Decl. ¶¶ 6, 8-10. Meanwhile, Representative Plaintiff researched and identified qualified counsel, participated in the settlement process, and risked being further targeted for identity theft by putting her name on this litigation. Representative Plaintiff will request a service payment of $2,500 for her participation in this litigation. Van Note Decl. ¶ 22.

### 2. The Settlement Resulted from Informed, Arm's-Length Negotiations

The Settlement Agreement was negotiated by arm's-length bargaining between experienced counsel. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002). Here, the Parties' Settlement was reached after contentious negotiations consisting of two separate full day of mediations. The second meditation, which was successful, was before well respected and experienced neutral, Hon. David E. Jones. Van Note Decl. ¶¶ 7, 10. Following the mediation with Judge Jones, where the Parties reached a settlement in principle, the Parties engaged in ongoing negotiations regarding the various terms set forth in the Settlement Agreement. Van Note Decl. ¶¶ 10-11. Taking into consideration the Parties' preparation for the mediation, the length of negotiations and the involvement of a highly qualified

private mediator, the proposed Settlement should be presumed procedurally fair. Fed. R. Civ. P. Rule 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3. The Relief Provided for the Class Is Adequate

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C) While Plaintiff believes her case is strong, ongoing litigation will require Plaintiff and the Class to take on significant risks of expenses, delays and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

The risk, expense and complexity of further litigation is significant. If the case were to proceed without settlement, the Parties will face the following hurdles: (1) expensive and extremely time-consuming ESI-related discovery efforts that often involve developing appropriate ESI protocols and then compiling and reviewing voluminous document productions of a highly technical nature; (2) due to the complexity of the ESI, the Parties will almost certainly need to retain cybersecurity experts who can parse and evaluate the data among other issues[2] and (3) substantial

---

[2] In data breach actions, expert testimony is usually required to evaluate issues such as the nature of the alleged data breach, the threat of actors who exfiltrated data, identifying the presence of the stolen data on the dark web, the quality of cybersecurity measures in place at the time of the breach and any necessary remediation. *In re Anthem Data Breach Litig.*, 327 F.R.D. 299, 319-326 (N.D. Cal 2018) (as condition of a settlement, Defendant implemented cybersecurity controls and reforms

7

motion practice on an array of issues such as standing, causation, damages, and injunctive relief. Van Note Decl. ¶ 14. There is also substantial risk in Plaintiff obtaining and maintaining class certification. Class certification outside the settlement context poses a significant challenge. Van Note Decl. ¶ 15.

Taking this case to trial and evaluating potential damages would be highly risky as few, if any, data breach trials have been conducted. The reality is that even if Plaintiff did successfully obtain a substantial verdict, there are significant questions whether this particular Defendant (which is not a large entity with deep pockets) can satisfy the judgment. Van Note Decl. ¶ 16. In short, without the Settlement, the parties would face years of risk, uncertainty, complexity and expense, and these challenges would remain through certification, trial and appeals. All of these issues would persist without any guarantee of relief for the class. Van Note Decl. ¶ 17.

    **4.**    **The Settlement Structure Is Fair, Reasonable, and Adequate**

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members may have suffered varying types and degrees of injury, the Settlement permits Settlement Class Members to receive cash payments consistent with the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. In this respect, the Settlement achieves customized recovery to each Class Member and treats them fairly and equitably. As such, this type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g., In*

---

recommended by plaintiffs' cybersecurity experts and the experts would also monitor Defendant's annual cybersecurity reports for compliance); *Quality Plus Servs. V. Nat'l Union Fire Ins. Co.*, U.S. Dist. LEXIS 7337 (E.D. Va 2020) at *31 (cybersecurity expert retained to determine attacker's country of origin). In sum, if a case does not resolve after the parties engage in very basic discovery, it is almost inevitable that experts will need to be retained and litigation costs will rise.

*re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), aff'd, *Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

The fact that only a modest number of Settlement Class Members have taken advantage of the benefits offered under the Settlement does not change the fact that the Settlement is fair. The overwhelming majority of the Class received Notice of the Settlement. Class Counsel has no way to further incentivize Class Members to make claims, other than to make these robust amounts available if they do make claims. Put another way, the Settlement is a complete success because it created a process to compensate those Settlement Class Members who, in fact, suffered actual damages. Van Note Decl. ¶ 18.

### 5. The Settlement Falls Within the Range of Possible Approval

When considering whether the amount of a Settlement is adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "A cash settlement amounting to only a fraction of the potential cash recovery (and the present proposed settlement is not such a recovery) does not in itself render the settlement unfair or inadequate." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987), quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) at 455. Plaintiff has analyzed the potential class recovery and offers the following explanation of the factors bearing on the amount of the compromise:

This Data Breach involves limited exposure of Private Information. Accordingly, the remaining compensable claims are for lost time and damages for out-of-pocket expenses (e.g.,

9

postage, paying for credit freezes, etc.). Reimbursement for ordinary losses and attested time, coupled with the option for an alternative *pro rata* cash payment is more than enough to satisfy the vast bulk of potential claims. Given the type of information involved, these represent an excellent outcome for the Class. Van Note Decl. ¶ 19.

### 6. Experienced Counsel Recommend Approval

Class Counsel has substantial experience in complex class action litigation, including data privacy cases. Van Note Decl. ¶¶ 26-33. Class Counsel fully endorse the Settlement as falling within the range of reasonableness. Van Note Decl. ¶¶ 32-33.

## V. ATTORNEYS' FEES, COSTS, SERVICE AWARD AND SETTLEMENT ADMINISTRATION FEES

### A. Class Counsel should be awarded their attorneys' fees and costs

Class Counsel seeks an attorneys' fees award of one-third of the settlement fund, or $77,492 plus litigation costs of $3,429. As detailed in Plaintiff's Motion for Attorneys' Fees and Costs and Service Award, courts have frequently awarded attorneys' fees ranging up to 36% in class actions *Sciaroni v. Target Corp. (In re Target Corp. Customer Data Sec. Breach Litig.)*, 892 F.3d 968, 977 (8th Cir. 2018). Van Note Decl. ¶ 22. Class Counsel have also reasonably and necessarily incurred $3,429 in expenses. Van Note Decl. ¶ 23. Such costs were reasonable, necessary and are appropriate for reimbursement. Because the costs incurred by Plaintiff's counsel were reasonable and necessary, the Court should approve reimbursement.

### B. Plaintiff should receive a Service Award

The Court should approve the Service Award for the named Plaintiff in the amount of $2,500 for Plaintiff's efforts and for her courage in stepping forward. Van Note Decl. ¶ 25. The requested Service Awards is in the range of other awards in the Eighth Circuit. See *Caligiuri*, 855 F.3d at 867

("[C]ourts in this circuit regularly grant service awards of $10,000 or greater."); *Huyer v. Njema*, 847 F.3d 923, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs).

### C. Reimbursement of Settlement Administration fees is appropriate

Representative Plaintiff respectfully requests approval of Epiq's settlement administration costs and fees. Epiq's total fees are submitted a competitive bid of $58,000 a very reasonable amount given the size of the Class and the work required to send the Notice, process settlement checks, establish a website and communicate with Class Members and counsel. Van Note Decl. ¶ 26.

### VI. CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant final approval of the proposed Class Action Settlement.

Dated:  August 19, 2025                               Respectfully Submitted,

                                        By: */s/ Laura Van Note*
                                            Laura Van Note, Esq., ED of MO# 310160CA
                                            **COLE & VAN NOTE**
                                            555 12th Street, Suite 2100
                                            Oakland, California 94607
                                            Telephone:  (510) 891-9800
                                            Facsimile:  (510) 891-7030
                                            Email:      lvn@colevannote.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

*/s/Laura Grace Van Note*
Laura Grace Van Note, Esq.