UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SUSAN GARBARINO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAHON, SAHAROVICH, & TROTZ, PLC,<br><br>Defendant. | Case No. 4:23-cv-01326-JMB<br><br>**CLASS ACTION**<br><br>**DECLARATION OF SCOTT M. DICARLO REGARDING IMPLEMENTATION OF NOTICE AND CLAIMS ADMINISTRATION** |

**DECLARATION OF SCOTT M. DICARLO REGARDING IMPLEMENTAITON OF NOTICE AND CLAIMS ADMINISTRATION**

I, Scott M. DiCarlo, hereby declare and state as follows

1.  I am a Project Manager employed by Epiq Class Action & Claims Solutions, Inc. ("Epiq"). I have more than 10 years of experience handling all aspects of settlement administrations. The statements of fact in this declaration are based on my personal knowledge and information provided to me by my colleagues in the ordinary course of business, and if called on to do so, I could and would testify competently thereto.

2.  Epiq was appointed as the Claims Administrator pursuant to the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (the "Order") dated January 28, 2025, and in accordance with the Settlement Agreement and Release (the "Agreement").[1] I submit this Declaration in order to advise the Parties and the Court regarding the implementation of the Court-approved Class Notice Program, and to report on Epiq's handling to date of the Claims administration, in accordance with the Order and the Agreement.

---

[1] All capitalized terms not otherwise defined in this document shall have the same meanings ascribed to them in the Agreement.

3.      Epiq was established in 1968 as a client services and data processing company. Epiq has administered bankruptcies since 1985 and settlements since 1993. Epiq has routinely developed and executed notice programs and administrations in a wide variety of mass action contexts including settlements of consumer, antitrust, products liability, and labor and employment class actions, settlements of mass tort litigation, Securities and Exchange Commission enforcement actions, Federal Trade Commission disgorgement actions, insurance disputes, bankruptcies, and other major litigation. Epiq has administered more than 4,500 settlements, including some of the largest and most complex cases ever settled. Epiq's class action case administration services include administering notice requirements, designing direct-mail notices, implementing notice fulfillment services, coordinating with the United States Postal Service ("USPS"), developing and maintaining notice websites and dedicated telephone numbers with recorded information and/or live operators, processing exclusion requests, objections, claim forms and correspondence, maintaining class member databases, adjudicating claims, managing settlement funds, and calculating claim payments and distributions. As an experienced neutral third-party administrator working with settling parties, courts, and mass action participants, Epiq has handled hundreds of millions of notices, disseminated hundreds of millions of emails, handled millions of phone calls, processed tens of millions of claims, and distributed hundreds of billions in payments.

## OVERVIEW OF ADMINISTRATION

4.      Pursuant to the Agreement and Order Epiq was appointed to provide, and did provide, the following administrative services for the benefit of Settlement Class Members, as they are defined in the Agreement:

  1. As appropriate, mail a Postcard Notice to Class Members;

2. Establish and maintain an official Settlement Website containing information about the Settlement;

3. Establish and maintain an official toll-free number that Settlement Class Members may contact for additional information about the Settlement;

4. Review and process Requests for Exclusion sent to or received by Epiq;

5. Review and track objections sent to or received by Epiq;

6. Receive, process, track, and report on Claim Forms sent to or received by Epiq;

7. As appropriate, mail deficiency letters, and track responses thereto;

## DATA TRANSFER

5. On February 6, 2025, Epiq was provided with 1 electronic file containing potential Class Member records. The file contained 15,623 of names and addresses for potential Class Members ("Class Data").

6. Epiq loaded the information provided into a database created for the purpose of administration of the proposed Settlement. Epiq assigned unique identifiers to all the records it received in order to maintain the ability to track them throughout the Settlement administration process. Epiq combined the data and removed 188 exact duplicate records, which resulted in 15,435 Class Member records (the "Class List"). Of these, 3 Class Member records did not contain sufficient information to mail notice to and are maintained as part of the Class List should Epiq obtain additional contact information.

## DISSEMINATION OF THE INDIVIDUAL CLASS NOTICE BY POSTAL MAIL

7.      Pursuant to the Order, Epiq was responsible for sending Notice to all potential Class Members via U.S. First Class Mail.  Attached hereto as **Attachment A** is the Class Notice that Epiq disseminated by mail ("Postcard Notice).

8.      Prior to mailing the Postcard Notice to the Class List, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[2]  In addition, the addresses were processed via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  To the extent that any Class Member had filed a USPS change of address request, and the address was certified and verified, the current address listed in the NCOA database was used in connection with the Postcard Notice mailing.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.  A total of 735 records in the Class List sent through the USPS NCOA, CASS, and DPV process were updated with new addresses.

9.      Prior to commencing any mailings for this matter, Epiq established a dedicated post office box to mail notice from and to allow Class Members to contact the Claims Administrator or submit documents by mail.  Epiq has and will continue to maintain the P.O. Box throughout the administration process.

10.     On February 27, 2025, Epiq mailed 15,432 Postcard Notices via First Class USPS Mail to potential Class Members on the Class List with a valid mailing address.  In addition, a Claim Package has been mailed via First Class U.S. Mail to all persons who submitted a request for one.  As of July 31, 44 Claim Packages have been mailed as a result of such requests.  A copy

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

of the Claim Package containing the Long-form Notice and the Claim Form is attached hereto as **Attachment B**.

11. The return address on the Postcard Notices is the post office box maintained by Epiq. As of July 31, 2025, 56 Postcard Notices have been returned by the USPS with forwarding information and promptly re-mailed to the forwarding address.

12. As of July 31, 2025, a total of 2,533 Postcard Notices have been returned to Epiq without forwarding address information. As a result of skip trace searches performed by Epiq using a third-party lookup service, a total of 1,380 addresses were updated and these Postcard Notices were re-mailed to the updated addresses.

13. As of July 31, 2025, Epiq has mailed Notice to 15,432 Class Members, with Notice to 1,112 unique Class Members currently known to be undeliverable, which is a 92.7% deliverable rate to the Class.

## SETTLEMENT WEBSITE

14. Pursuant to the Order, on February 26, 2025, Epiq launched a website, www.nstsettlement.com, that potential Class Members could visit to obtain additional information about the proposed Settlement, as well as important documents, including the Long-form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, and any other relevant information that the parties agree to provide or that the Court may require ("Website"). The Website contains a summary of options available to Class Members, deadlines to act, and provides answers to frequently asked questions. Class Members were also able to file a Claim via the website, or download a paper Claim Form, which they could then file by mail. References to the Website were prominently displayed in the notice documents.

15. As of July 31, 2025, the Website has been visited by 2,020 unique visitors and 8,025 website pages have been viewed. Epiq has maintained and will continue to maintain and update the Website throughout the administration of the proposed Settlement.

## TOLL-FREE INFORMATION LINE

16. Pursuant to the Order, on February 26, 2025, Epiq established and is maintaining a toll-free interactive Voice Response Unit ("VRU"), 1-888-884-9871, to provide information and accommodate inquiries from Class Members. Callers hear an introductory message and then are provided with scripted information about the Settlement in the form of recorded answers to frequently asked questions. Callers also have the options of requesting a Claim Package by mail, The toll-free number was included in the Postcard Notice sent to Class Members and the automated telephone system is available 24 hours per day, 7 days per week.

17. As of July 31, 2025, the toll-free number has received 656 calls representing 1,946 total minutes, Epiq has and will continue to maintain and update the VRU throughout the Settlement administration process.

## EMAIL INBOX

18. Epiq established and maintains an email inbox, info@NSTSettlement.com for Class Members to submit requests for Notices, submit Claim Forms and ask questions regarding the Settlement. As of July 31, 2025, Epiq has received and responded to a total of 113 incoming emails. Epiq will continue to maintain this inbox throughout the Settlement administration.

## REQUESTS FOR EXCLUSION

19. Pursuant to the Order, Class Members who wished to be excluded from the Settlement were required to mail or submit, as appropriate a written Requests for Exclusion to

Epiq postmarked on or before April 28, 2025. As of July 31, 2025, Epiq has received zero requests for exclusion.

## OBJECTIONS RECEIVED

20.     Pursuant to the Order, Class Members who wished to object to the Settlement were required to submit written objections to the Epiq, such that they were postmarked on or before the objection deadline of April 28, 2025. As of July 31, 2025, Epiq is aware of or has received zero written objections to the Settlement.

## CLAIMS RECEIVED

21.     Pursuant to the Order, Class Members who wished to make a claim were required to submit a completed Claim Form to the Claims Administrator online and/or via U.S. Mail, so that it was submitted and/or postmarked no later than June 27, 2025. As of July 31, 2025, Epiq has received 927 Claim Forms for 871 unique Class Members.

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct and that this declaration was executed on July 31, 2025, in Maple Valley, Washington.

_____*Scott DiCarlo*_____
Scott DiCarlo     Signer ID: FZQ78E0S10...
Project Manager

# Attachment A

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

BARCODE
NO-PRINT
ZONE

Barcode No-Print Zone

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

Garbarino v NST
Settlement Administrator
P.O. Box 2877
Portland, OR 97208-2877

Unique ID: <<UNIQUEID>>
PIN: <<PIN>>

**If you were notified of a Data Security Incident involving Nahon Saharovich & Trotz, PLC, you may be entitled to benefits from a settlement.**

A proposed settlement has been reached in a class action lawsuit against Nahon Saharovich & Trotz, PLC ("NST" or "Defendant") related to a Data Security Incident that NST discovered in June 2023 and about which NST notified potentially impacted individuals between July 2023 and September 2023. The lawsuit claims NST is legally responsible for the Data Security Incident, where certain information, including, but not necessarily limited to, full names, dates of birth, Social Security Numbers, lost wages, and general medical information of employees and/or clients of NST, may have been accessed and exfiltrated by unauthorized individuals. The lawsuit asserts various legal claims, including negligence, breach of implied contract, and breach of the implied covenant of good faith & fair dealing. NST denies these claims and denies any wrongful conduct on its part.

**You are receiving this Notice because you may be a Settlement Class Member.** The Settlement Class is defined as all individuals within the United States of America whose information described above was potentially exposed to unauthorized third parties as a result of the Data Security Incident.

Under the terms of the Settlement, you can recover the following benefits: (1) a pro rata cash payment and (2) if you experienced unreimbursed unauthorized or fraudulent charges or out of pocket expenses which you believe in good faith were fairly traceable to the Data Security Incident, you may file a claim for an out-of-pocket reimbursement of up to $5,000.

The easiest way to submit a claim is online at **www.NSTSettlement.com** using your Unique ID found on the front of this postcard. To be eligible, you must complete and submit a valid Claim Form, postmarked or submitted online on or before **June 27, 2025.** You can also exclude yourself or object to the Settlement on or before **April 28, 2025.** If you do not exclude yourself from the Settlement, you will remain in the Settlement Class and will give up the right to sue the Defendant over the claims resolved in the Settlement. If you do not want to be legally bound by the Settlement, you must exclude yourself by **April 28, 2025. A summary of your rights under the Settlement and instructions regarding how to submit a claim, exclude yourself, or object are available at www.NSTSettlement.com.** If you do nothing, you will remain in the class, you will not be eligible for benefits, and you will be bound by the decision of the Court and give up your rights to sue NST for the claims resolved by this Settlement.

Class Counsel, Cole & Van Note, has applied to the Court for Attorneys' Fees of up to $77,492 plus Litigation Costs and expenses not to exceed $65,000. The Court will hold a Final Approval Hearing on **September 4, 2025, at 9:30 a.m.** At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also listen to people who have asked to speak at the hearing. You may attend the Final Approval Hearing at your own expense, or you may also pay your own lawyer to attend, but it is not necessary. It is possible the Court could reschedule the hearing to a different date or time without notice, so it is a good idea before the hearing to check **www.NSTSettlement.com.**

This Notice is a summary. The Settlement Agreement and more information about the lawsuits and Settlement are available at **www.NSTSettlement.com** or by calling toll-free **1-888-884-9871.**

# Attachment B

<u>Long-Form Notice</u>

<u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

*Susan Garbarino v. Nahon, Saharovich, & Trotz, PLC*, Case No. 4:23-cv-01326
(E.D. MO.)

> **You may be eligible for a cash payment from a class action settlement involving Nahon, Saharovich, & Trotz, PLC, but you need to act.**

This is a court-authorized Notice of a proposed settlement in a class action lawsuit, *Susan Garbarino v. Nahon, Saharovich, & Trotz, PLC*, Case No. 4:23-cv-01326, currently pending in the United States District Court for the Eastern District of Missouri. The proposed settlement would resolve a lawsuit that alleges that Nahon, Saharovich, & Trotz, PLC ("NST"), was negligent and breached contractual and common law duties in connection with a Data Security Incident involving NST's network servers that NST discovered in June 2023. NST denies these claims and denies any wrongful conduct on its part. This Notice explains the nature of the class action lawsuit, the terms of the Settlement, and your legal rights and obligations.

You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. Because your rights will be affected by this Settlement, it is extremely important that you read this Notice carefully. To read the precise terms and conditions of the Settlement, you can access a copy of the Settlement Agreement on the Settlement Website at www.NSTSettlement.com. You may also contact the Settlement Administrator at 1-888-884-9871.

| Summary of Your Legal Rights and Options in This Settlement | | Deadline |
|---|---|---|
| **Submit a Claim** | The only way to be eligible to receive any money from this Settlement is to submit a timely and valid Claim Form. The Claim Form must be submitted no later than **June 27, 2025**. | **June 27, 2025** |
| **Opt Out of the Settlement** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against NST related to the legal claims resolved by this Settlement. You can hire your own legal counsel at your own expense. | **April 28, 2025** |
| **Object to the Settlement and/or Attend a Hearing** | If you do not opt out of the Settlement, you may object to it by writing to the Court explaining why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may still file a Claim. Any Settlement Class Member who does not file a timely and adequate objection waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement. | **April 28, 2025** |
| **Do Nothing** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against NST related to the legal claims resolved by this Settlement. | **No Deadline** |

### What Is This Lawsuit About?

In a class action, one or more people called class representatives sue on behalf of people who have similar claims. All of the people with similar claims are class members. One court resolves the issues for all class members, except those who exclude themselves from the class.

This lawsuit began when Plaintiff Susan Garbarino filed a putative class action complaint against NST. In the lawsuit, Plaintiff alleges that NST was negligent and violated contractual and common law duties when an unauthorized third party obtained unauthorized access to certain information relating to NST's clients/employees by gaining unauthorized access to NST's network servers. NST denies any liability or wrongdoing of any kind associated with the claims in this lawsuit.

**QUESTIONS? VISIT WWW.NSTSETTLEMENT.COM OR CALL
1-888-884-9871 (TOLL-FREE).**

This Notice contains only a summary of the allegations. The Complaint in the lawsuit, which is posted at www.NSTSettlement.com, contains all of the allegations. NST's answer and other filings in the case, including the motion for approval of the Settlement Agreement, are also available on the Settlement Website.

## Why Is There a Settlement?

To resolve this matter without the expense, delay, and uncertainties of litigation, the Parties reached a settlement. The proposed Settlement would require NST to pay money to the Settlement Class; pay settlement administration costs, attorneys' fees, and costs of Class Counsel; and pay a Service Award Payment to the Settlement Class Representative, as may be approved by the Court. The Settlement is not an admission of wrongdoing by NST and does not imply that there has been, or would be, any finding that NST violated the law.

## Am I a Class Member?

You are a member of the Settlement Class if you are an individual within the United States of America whose personal information was potentially exposed to unauthorized third parties as a result of the Data Security Incident identified above.

## Who Represents Me?

The Court has appointed Laura Van Note of Cole & Van Note as Class Counsel.

> Laura Van Note
> COLE & VAN NOTE
> 555 12th Street, Suite 2100
> Oakland, CA 94607

Class Counsel, Cole & Van Note, has applied to the Court for Attorneys' Fees of up to $77,492 plus Litigation Costs and expenses not to exceed $65,000. Class Counsel will petition to be paid legal fees and to be reimbursed for their reasonable expenses from the Settlement Fund. You do not need to hire your own lawyer, but you may choose to do so at your own expense.

## What Are the Settlement Benefits?

NST has agreed to establish a Settlement Fund by depositing with the Settlement Administrator US $232,500 in cash.

The Settlement Fund will be used to pay attorneys' fees and costs, a Service Award Payment for the Settlement Class Representative, and settlement administration costs. After deducting amounts for attorneys' fees and costs, a Service Award Payment for the Settlement Class Representative, and settlement administration costs, the remaining amount ("Net Settlement Amount") will be used to pay timely, valid Claims.

A Settlement Class Member who timely submits a valid and approved Claim Form shall be entitled to (1) a pro rata cash payment, and (2) if the Settlement Class Member experienced unreimbursed unauthorized or fraudulent charges or out-of-pocket expenses which they believe in good faith were fairly traceable to the Data Security Incident, they may file a claim for an out-of-pocket reimbursement of up to $5,000.

After payment of the above awards, if any money remains from the Net Settlement Amount, that money will be distributed pro rata among all Settlement Class Members who have timely submitted a valid and approved Claim Form, or if too little money remains to make such a payment, the money will be donated to an appropriate charity.

NST has also implemented certain enhancements to its data security.

## How Do I Get a Payment?

You must submit a completed Claim Form no later than **June 27, 2025**. You may submit a Claim Form online at www.NSTSettlement.com.

**QUESTIONS? VISIT WWW.NSTSETTLEMENT.COM OR CALL
1-888-884-9871 (TOLL-FREE).**

### How Do I Exclude Myself from the Settlement?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting out," you will not be eligible to recover any benefits as a result of this Settlement and you will not receive a payment or have any rights under the Settlement Agreement. However, you will keep the right to sue NST at your own expense about the legal issues raised in this lawsuit. You may exclude yourself from the Settlement by mailing a written notice to the Settlement Administrator, postmarked on or before **April 28, 2025**. Your exclusion request letter must

- include your name;
- be in writing;
- state your current address;
- contain the statement "I request that I be excluded from the Settlement Class in the case of *Susan Garbarino v. Nahon, Saharovich, & Trotz, PLC*";
- be signed by you; and
- be mailed to the Settlement Administrator, P.O. Box 2877, Portland, OR 97208-2877, postmarked on or before **April 28, 2025**.

### How Do I Object to the Settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

If you are a member of the Settlement Class and you do not exclude yourself from the Settlement, you can object to the Settlement. To do so, you must file your written objection with the Court no later than **April 28, 2025**, and mail a copy to Epiq, the Settlement Administrator, at the address listed below. Your written objection may include any supporting documentation you wish the Court to consider.

The written objection must include

- the name of the proceedings;
- the Settlement Class Member's full name, current mailing address, telephone number, and email address;
- a written statement of the specific grounds for the objection, as well as any legal basis and documents supporting the objection;
- a written statement as to whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;
- the identity of any and all attorneys representing the objector;
- a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and
- the signature of the Settlement Class Member or the Settlement Class Member's attorney.

If your objection is submitted and overruled by the Court at the Final Approval Hearing, you will remain fully bound by the terms of the Settlement Agreement and the Final Approval Order. Any Settlement Class Member who does not file a timely and adequate objection waives the right to object or to be heard at the Final Approval hearing and shall be forever barred from making any objection to the Settlement.

The Court is located at Thomas F. Eagleton U.S. Courthouse, 111 South 10th Street, St. Louis, MO 63102. The mailing address for the Settlement Administrator, Epiq, is **P.O. Box 2877, Portland, OR 97208-2877**.

### What Is the Difference Between Objecting and Asking to Be Excluded?

Objecting means telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

**QUESTIONS? VISIT WWW.NSTSETTLEMENT.COM OR CALL
1-888-884-9871 (TOLL-FREE).**

## What Am I Agreeing to by Remaining in the Settlement Class?

Unless you exclude yourself, you will be part of the Settlement Class and you will be bound by the release of claims in the Settlement. This means that, if the Settlement is approved, you cannot sue, continue to sue, or be part of any lawsuit against NST or the other Released Parties asserting a "Released Claim," as defined below. It also means that the Court's Final Approval Order approving the Settlement and the judgment in this case will apply to you and legally bind you.

**"Released Claims"** means any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims or causes of action of every kind and description whatsoever, accrued or unaccrued, direct or indirect, individual, or representative, whether based on federal, state, local, statutory, or common law, or any other law, against the Released Parties, arising out of, or relating to, actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions, or failures to act in connection with the Data Security Incident, and including all claims that were brought or could have been brought in the Action, belonging to any and all Settlement Class Members or Releasing Parties, including but not limited to any state law or common law claims that they may have or had, such as under California's Customer Records Act, California Civil Code section 1798.80, et seq., and/or California's Consumer Privacy Act, California Civil Code section 1798.100, et seq. Released Claims include causes of action, claims, complaints, suits, petitions, any allegations of wrongdoing, rights, liabilities, or demands for legal, equitable, or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, multiplied damages, attorneys' fees and/or obligations, costs, interest, or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims") that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Action, including but not limited to those concerning the Data Security Incident. Settlement Class Members and the Releasing Parties expressly waive all rights under California Civil Code section 1542, which provides the following:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**"Released Parties"** means NST and its future, present, and former, direct or indirect, predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments; and any and all of their respective past, present, and future, direct or indirect, officers, managers, predecessors, administrators, executors, trustees, directors, employees, investors, stockholders, shareholders, partners, members, owners, associates, corporations, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, benefit plans, subrogees; and the predecessors, successors, and assigns of any of the foregoing.

## When Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Final Approval Hearing on **September 4, 2025, at 9:30 a.m.** The court is located at:

Thomas F. Eagleton U.S. Courthouse
Courtroom 15 South
111 South 10th Street
St. Louis, MO 63102

At that hearing, the Court will determine the overall fairness of the Settlement, hear objections, and decide whether to approve the requested attorneys' fees and expenses, Service Award Payment for the Settlement Class Representative, and settlement administration costs. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement Website at www.NSTSettlement.com and the Court's docket for updates.

## How Do I Get More Information?

For more information, go to www.NSTSettlement.com or call the Settlement Administrator at 1-888-884-9871. You may also write to the Settlement Administrator via mail at P.O. Box 2877, Portland, OR 97208-2877, or via email at info@NSTSettlement.com.

**QUESTIONS? VISIT WWW.NSTSETTLEMENT.COM OR CALL
1-888-884-9871 (TOLL-FREE).**

*Susan Garbarino v. Nahon, Saharovich, & Trotz, PLC*
Case No. 4:23-cv-01326-JMB (E.D. Mo.)

**Important:** Your Claim Form must be submitted by **June 27, 2025**, in order to be timely and valid. You may submit a Claim Form by completing the form below and returning it by mail or by filling out the form on the Settlement Website.

Your failure to submit a timely Claim Form will result in you forfeiting any payment and benefits for which you may be eligible under the Settlement.

**To begin your Claim Form, please enter your Unique ID below.** Your Unique ID can be located on the Postcard Notice that was mailed to you. If you did not receive a Postcard Notice but believe you are a Settlement Class Member, or if you have misplaced your notice, you may send an email to info@NSTSettlement.com for additional assistance.

This Claim Form should be filled out if you are an individual who received notice of a Data Security Incident that Nahon, Saharovich, & Trotz, PLC ("NST"), disclosed in June 2023 pertaining to unauthorized access to certain information, including, but not necessarily limited to, full names, dates of birth, Social Security Numbers, lost wages, and general medical information of employees and/or clients of NST. You may receive money if you fill out this Claim Form, if the Settlement is approved, and if you are found to be eligible for a payment.

The Settlement Notice, available on the Settlement Website, describes your legal rights and options.

If you wish to submit a Claim for a Settlement Payment, you will need to provide the information requested below.

Please complete the section for the category or categories of benefits that you would like to claim. Categories include (1) Out-of-Pocket Loss and Expense Reimbursement and (2) Pro Rata Cash Payment. If you are claiming out-of-pocket expenses, please be sure to fill in the total amount you are claiming and attach the required documentation.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED INFORMATION BELOW AND SIGN THIS CLAIM FORM.

First Name *(required)*    MI    Last Name *(required)*

Mailing Address *(required)*

City *(required)*    State *(req)*    ZIP Code *(required)*

Country *(required, default to United States)*

Telephone Number *(required, must be minimum of 10 digits)*

Email Address *(required, must be valid email address format)*

Unique ID

01-CA40080522

1

## Out-of-Pocket Loss and Expense Reimbursement

Allowable out-of-pocket expenses are detailed in the Settlement Agreement, available at www.NSTSettlement.com. To receive up to **$5,000** in reimbursement of Out-of-Pocket Losses caused by, or expenses incurred as a result of, the Data Security Incident, please provide the following information.

☐   Check this box if you are submitting a Claim for reimbursement of Out-of-Pocket Losses.

| Cost Type (Fill in all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and how it relates to the Data Security Incident) |
|---|---|---|---|
| ☐ Unreimbursed fraud losses or charges  *Examples: Account statement with unauthorized charges highlighted; correspondence from financial institution declining to reimburse you for fraudulent charges.* | MM – DD – YYYY | $ | |
| ☐ Professional fees incurred in connection with identity theft or falsified tax returns  *Examples: Receipt for hiring service to assist you in addressing identity theft; accountant bill for re-filing tax return.* | MM – DD – YYYY | $ | |
| ☐ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing  *Examples: Letter from IRS or state about tax fraud in your name; documents reflecting length of time you waited to receive your tax refund and the amount.* | MM – DD – YYYY | $ | |

| Cost Type (Fill in all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and how it relates to the Data Security Incident) |
|---|---|---|---|
| ☐ Credit freeze<br><br>*Examples: Notices or account statements reflecting payment for a credit freeze.* | ☐☐ – ☐☐ – ☐☐☐☐<br>MM    DD    YYYY | $ ☐☐☐☐☐ . ☐☐ | |
| ☐ Credit monitoring costs<br><br>*Examples: Receipts or account statements reflecting purchases made for credit monitoring and insurance services.* | ☐☐ – ☐☐ – ☐☐☐☐<br>MM    DD    YYYY | $ ☐☐☐☐☐ . ☐☐ | |
| ☐ Miscellaneous expenses such as notary, fax, postage, copying, mileage, time spent, and long-distance telephone charges<br><br>*Examples: Phone bills; gas receipts; postage receipts; detailed list of locations to which you traveled (e.g., police station, IRS office), indication of why you traveled there (e.g., police report or letter from IRS re: falsified tax return), and number of miles you traveled to remediate or address issues related to the data incident.* | ☐☐ – ☐☐ – ☐☐☐☐<br>MM    DD    YYYY | $ ☐☐☐☐☐ . ☐☐ | |
| ☐ Other<br><br>*Please provide a detailed description on the right or in a separate document submitted with this Claim Form.* | ☐☐ – ☐☐ – ☐☐☐☐<br>MM    DD    YYYY | $ ☐☐☐☐☐ . ☐☐ | |

Documentary proof **MUST** be submitted to support your exact Claim amount. Self-prepared documents are, by themselves, insufficient.

**Pro Rata Cash Payment**

All Settlement Class Members are eligible to claim a Pro Rata Cash Payment by checking the box below. The specific amount of this payment will be based on the number of Claims received.

☐ I would like to claim a Pro Rata Cash Payment.

**Payment Selection**

Select from one of the following options:

- PayPal*: ☐

  (PayPal Email Address)

- Venmo*: ☐

  (Venmo Email Address)

- Zelle*: ☐

  (Zelle Email Address)

- Paper Check via Mail: ☐

*If you select payment via PayPal, Venmo, or Zelle, the email address entered on this form will be used to process the payment to your account linked to that email address.

Signature _____   Date __ – __ – ____
                                         MM   DD   YYYY

04-CA40080522

4

| **Your claim must be <u>submitted online</u> or <u>postmarked</u> by June 27, 2025.** | *Susan Garbarino v. Nahon, Saharovich, & Trotz*<br>Case No. 4:23-cv-01326-JMB (E.D. Mo.)<br>**CLAIM FORM** | **CRE** |
|---|---|---|

## GENERAL INSTRUCTIONS

This Claim Form should be filled out if you are an individual who received notice from Nahon, Saharovich, & Trotz ("NST") that your Personal Information was potentially exposed to unauthorized third parties as a result of a Data Security Incident. You may receive money if you fill out this Claim Form, the Settlement is approved, and you are found to be eligible for a payment.

The Long-Form Notice describes your legal rights and options.

If you wish to submit a claim for a Settlement Payment, please provide the information requested above.

**<u>SUBMIT YOUR CLAIM FORM BY JUNE 27, 2025.</u>**

Online: www.NSTSettlement.com

Mail:

*Garbarino v. NST* Data Incident

Settlement Administrator

P.O. Box 2877

Portland, OR 97208-2877

**QUESTIONS? VISIT WWW.NSTSETTLEMENT.COM OR CALL 1-888-884-9871 (TOLL-FREE).**